*E-FILED - 4/21/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK R. SCHEURICH,<br><br>               Petitioner,<br><br>  vs.<br><br>BEN CURRY, Warden<br><br>               Respondent. | No. C 06-3331 RMW (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

     Petitioner, Frank Scheurich, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms' ("Board's") denial of parole. This court found that the petition stated cognizable claims and ordered respondent[1] to show cause as to why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and petitioner filed a traverse. After reviewing the papers and the underlying record, the court concludes that petitioner is not entitled to relief based upon the claims presented and denies the petition.

---

[1] The proper named respondent in this action is Ben Curry, the acting Warden at the Correctional Training Facility in Soledad, where Petitioner is incarcerated. Stanley v. Cal. Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994) (holding that the warden where petitioner is incarcerated is the proper respondent); Rule 2(a), 28 U.S.C. § 2254. Accordingly, the Clerk shall terminate A.P. KANE and substitute BEN CURRY as the Respondent.

# BACKGROUND

Following his 1987 conviction for conspiracy to commit murder, petitioner was sentenced to a term of twenty-seven years-to-life in state prison. Petition at 2. On the date of the commitment offense, petitioner went to victim Gunter Goerlitz's house with a handgun equipped with a homemade silencer. Resp. Ex. 3 (Transcript of Parole Hearing, March 2, 2005 (citing Probation Officer's Report)) at 14. The victim went to the door and looked through the peephole. Id. at 15. When he did not recognize the man, he opened the door, and petitioner pointed the handgun directly at the victim's forehead. Id. Petitioner then forced his way into the victim's house, but the victim managed to grab the gun. Id. At this point, a struggle ensued with petitioner pistol whipping the victim twice on the forehead. Id. The victim fell to the ground, taking petitioner with him, and the gun fell outside the house and into some bushes. Id. Despite this, petitioner managed to regain control of the weapon and again pistol whipped the victim. Id. The victim was then lying on his back and managed to squarely kick petitioner in the groin with both feet. Id. at 15-16. Petitioner then fled the scene of the crime. Id. at 16.

When the police arrived, the victim was taken to Kaiser hospital. Id. At the hospital, the police interviewed the victim. Id. He stated that he did not recognize petitioner, but he was able to provide the officers with a description and a composite sketch of his attacker. Id. He also told the police that his estranged wife was attempting to fraudulently obtain his community property, and that she was the sole beneficiary to his life insurance policy. Id. at 17. The police questioned the victim's wife and determined that she was in Denver, Colorado at the time of the attack. Id. at 18. Through an investigation of telephone records, the police identified Petitioner. Id.

During a photo lineup, the victim identified petitioner as his assailant. Id. Petitioner was subsequently arrested at his residence. Id. at 19. Prior to his arrest, the police stated that petitioner was loading his car, and that he appeared to be preparing to leave the area. Id. at 19. Petitioner stated that he knew the victim's wife, and that she had been kind to him when he first came to the United States. Id. at 19. He also stated that he met the victim once several years ago, and that he was aware of the victim's wife's complaints about her husband's abusive

behavior. Id. at 19.  He denied that he ever owned a handgun, but during a subsequent search of his residence a gun that matched the weapon used in the commission of the offense was found. Id. at 20.

The weapon found at petitioner's residence matched the caliber of ammunition found at the crime scene.  Id. at 20.  Also, a magazine found at the crime scene matched the weapon.  Id. at 20.  Additionally, the police found a piece of paper with the victim's name, telephone number, and address.  Id. at 20.  There was also a sketch of the streets around the victim's residence.  Id. at 21.  Upon further questioning at a later date, petitioner admitted going to the victim's house, at the victim's wife's request, to "scare the victim a bit."  Id.  However, petitioner denied bringing a pistol with him.  Id.  Petitioner further stated that he had an unpleasant conversation with the victim that ended with a brief scuffle.  Id.  Petitioner denied any knowledge of the bullets found at the victim's residence.  Id.  Later during further questioning, petitioner admitted to being armed with a handgun, but insisted that he never intended to harm the victim.  Id. at 22.  He also stated that his involvement was only because he felt sorry for the victim's wife.  Id. at 23

Following the Board's parole suitability hearing on March 2, 2005, the Board denied petitioner parole.  Petitioner filed a state habeas petition in the Santa Clara Superior Court on August 17, 2005 that was denied on October 14, 2005.  Petitioner filed a habeas petition in the California Court of Appeal, which was summarily denied on December 13, 2005.  Petitioner then filed a habeas petition in the California Supreme Court, which was summarily denied on February 22, 2006.  Petitioner filed the instant federal habeas petition on May 19, 2006.

## DISCUSSION

**A.      Standard of Review**

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

1  Supreme Court of the United States; or (2) resulted in a decision that was based on an
2  unreasonable determination of the facts in light of the evidence presented in the State court
3  proceeding." 28 U.S.C. § 2254(d).
4       "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court
5  arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if
6  the state court decides a case differently than [the] Court has on a set of materially
7  indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the
8  'reasonable application clause,' a federal habeas court may grant the writ if the state court
9  identifies the correct governing legal principle from [the] Court's decisions but unreasonably
10 applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court
11 may not issue the writ simply because that court concludes in its independent judgment that the
12 relevant state-court decision applied clearly established federal law erroneously or incorrectly.
13 Rather, that application must also be unreasonable." Id. at 411.
14      "[A] federal habeas court making the 'unreasonable application' inquiry should ask
15 whether the state court's application of clearly established federal law was 'objectively
16 unreasonable.'" Id. at 409. In examining whether the state court decision was objectively
17 unreasonable, the inquiry may require analysis of the state court's method as well as its result.
18 Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively
19 unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss
20 of error fails to give proper deference to state courts by conflating error (even clear error) with
21 unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).
22      A federal habeas court may grant the writ if it concludes that the state court's adjudication
23 of the claim "results in a decision that was based on an unreasonable determination of the facts in
24 light of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d)(2). The
25 court must presume correct any determination of a factual issue made by a state court unless the
26 petitioner rebuts the presumption of correctness by clear and convincing evidence. 28. U.S.C. §
27 2254(e)(1).
28 ///

1   Where, as here, the highest state court to consider the petitioner's claims issued a
2 summary opinion which does not explain the rationale of its decision, federal review under §
3 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S.
4 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this
5 case, the last state court opinion to address the merits of petitioner's claim is the opinion of the
6 Santa Clara Superior Court.

7 **B.      Subject Matter Jurisdiction**

8   Respondent contends initially that this court lacks subject matter jurisdiction over the
9 instant petition because California inmates have no federally-protected due process right in
10 parole release. Resp. Mem. at 4. Respondent acknowledges the Ninth Circuit's decision in Sass
11 v. California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), but preserves this argument
12 because a petition for rehearing was pending at the time respondent filed the answer in the instant
13 case. Id.
14   Although a convicted person has no inherent or constitutional right to early release on
15 parole, a state's statutory parole scheme may create "a presumption that parole release will be
16 granted" if it uses mandatory language. Greenholtz v. Inmates of Nebraska Penal & Corr.
17 Complex, 442 U.S. 1, 12 (1979). The Ninth Circuit made clear in Sass that because California's
18 parole statute uses mandatory language, "California inmates continue to have a liberty interest in
19 parole after In re Dannenberg, 34 Cal. 4th 1061 (2005)." Sass, 461 F.3d at 1125 (finding that
20 district court misread Dannenberg which did not hold that there is no constitutionally protected
21 liberty interest in parole – but upholding denial of petition on other grounds). Because
22 controlling Ninth Circuit authority holds that petitioner has a constitutionally protected liberty
23 interest in release on parole, this court has subject matter jurisdiction pursuant to 28 U.S.C. §
24 2254 to decide whether petitioner's federal constitutional rights were violated by the Board's
25 determination that petitioner was not suitable for parole.
26 ///
27 ///
28 ///

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.rmw\hc.06\Scheurich331den          5

**C.     Analysis of Petitioner's Claims**

   1.     <u>The Board's Denial of Parole Did Not Violate Petitioner's Right to Due Process</u>

Petitioner asserts that the Board's decision denying him parole violated his right to due process. In 1987, petitioner was sentenced to a term of twenty-seven years-to-life in prison with the possibility of parole. The instant case involves petitioner's first parole consideration hearing held on March 2, 2005. Resp. Ex. 3 at 1. Petitioner contends that the Board denied him parole without any relevant and reliable evidence. Petition attachment at 2. Petitioner asserts that the Board failed to consider whether he is a current risk to the public. <u>Id.</u> at 2-3. Instead, petitioner claims that the Board focused "almost exclusively on the commitment offense" in determining that he was unfit for release. <u>Id.</u> at 2. Specifically, petitioner contends that the Board's finding that he committed his crime in a calculated manner and that he abused the victim was not based upon some evidence, and that as a result, the Board denied his right to due process. <u>Id.</u> at 3-4.

A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. <u>Sass</u>, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-55 (1985)). The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. <u>See</u> <u>Hill</u>, 472 U.S. at 455. An examination of the entire record is not required, neither is an independent assessment of the credibility of witnesses nor weighing of the evidence. <u>Id.</u> The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board. <u>See id.</u> Accordingly, "if the Board's determination of parole suitability is to satisfy due process there must be some evidence, with some indicia of reliability, to support the decision." <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir. 2005); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 904 (9th Cir. 2002).

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this court must consider the regulations that guide the Board in making its parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code of Regs., tit. 15, § 2402(a). The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[2]

      Here, the Board found that petitioner was not suitable for parole. Resp. Ex. 3 at 68. The Board determined that if released, petitioner "would pose an unreasonable risk of danger to society or a threat to public safety." Id. The Board observed that the crime was carried out in a calculated manner, that the victim was abused, and that petitioner committed the offense without concern for its intended consequences. Id. Additionally, the Board noted that petitioner has a history of alcohol and substance abuse, he has demonstrated only minimal participation in self-help programs, and has failed to upgrade vocationally. Id. at 69. The Board also commented on petitioner's history of disciplinary actions while in prison. Id. at 69. Specifically, petitioner has refused to work, failed to submit to a urinalysis test, failed a urinalysis test, possessed contraband, attempted to escape, disrespected staff, and refused to obey orders on multiple occasions. Id. The Board recognized that petitioner had made positive gains while in prison, such as gaining his GED and attending some counseling sessions. However, the Board concluded that petitioner's gains were insufficient to warrant parole in light of the totality of his behavior while incarcerated. Id. at 71. The Board found that petitioner must demonstrate more positive gains and remain discipline free before he will be eligible for parole. Id. at 74.

      In its order denying petitioner's habeas petition, the Santa Clara Superior Court found

---

[2] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit. 15, § 2402(d).

that the Board's decision was "supported by its reliance on egregious acts beyond the minimum necessary to sustain the conviction." Resp. Ex. 4 (In Re Frank R. Scheurich, Santa Clara Superior Court Order re: Writ of Habeas Corpus, Case No. 111113, (October 14, 2005)) at 1. The superior court observed the circumstances of the attack, which include the use of a homemade silencer and petitioner pistol whipping the victim. Id. Additionally, the court found that petitioner's numerous and recent disciplinary actions further supported the Board's denial of parole. Accordingly, the superior court denied the petition. Id.

Respondent claims that the Board need only provide an inmate with "'an opportunity to be heard, and when parole is denied... inform the inmate in what respects he falls short of qualifying for parole.'" Resp. Mem. at 6 (quoting Greenholtz, 442 U.S. at 1, 16 (1979)). Respondent notes that petitioner was provided an opportunity to participate in his parole hearing, that his input was considered by the Board, and that the Board provided him with a detailed explanation of the reasons why he was denied parole. Id. Thus, respondent contends that the Board did not violate petitioner's right to due process. Id. at 6-7.

This court concludes that the Board's determination that petitioner posses a current risk to public safety was based upon some evidence. The Board based its decision in part on petitioner's numerous disciplinary violations in prison and his minimal participation in self-help programs. Thus, the Board did not focus solely on the severity of the commitment offense in deciding to deny petitioner parole. Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on a unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1),(2).

    2.    <u>The Board Did Not Violate Petitioner's Right to Due Process by Finding That He Lacked Realistic Parole Plans</u>

Petitioner claims that the Board denied his right to due process by finding that he lacked realistic parole plans. Petition attachment at 8. Petitioner asserts that the Board acted unreasonably in requiring that he have parole plans because he is a German national with an INS hold, and as a result, he will be released into INS custody and deported to Germany upon his

1  release from state prison. Id. Petitioner asserts that any parole plans he might develop can never
2  be implemented. Id. Thus, petitioner argues that the denial of parole based upon his lack of
3  realistic parole plans violates his right to due process. Id.
4      Respondent asserts that if there is any evidence in the record to support a denial of parole,
5  petitioner cannot claim his right to due process has been violated. Resp. Mem. at 7. Respondent
6  notes that the Santa Clara Superior Court denied petitioner habeas relief because it determined
7  the Board's denial was based upon some evidence. Id. Petitioner's parole denial was based upon
8  the severity of the commitment offense and petitioner's numerous and recent disciplinary
9  offenses. Id. Thus, citing petitioner's lack of realistic parole plans as a reason for denying parole
10 is not a violation of his right to due process because the Board's denial met the some evidence
11 standard. Id.
12     This court concludes that the superior court correctly found that there was "some
13 evidence" in upholding the Board's decision to not grant petitioner parole, and thus, petitioner's
14 right to due process was not violated. Sass, 461 F.3d at 1128-29. The Board noted that
15 petitioner has a history of alcohol and substance abuse, and that he has had several disciplinary
16 violations while incarcerated. Ex. 3 at 69. Specifically, the Board observed that petitioner has a
17 record of minimal participation in self-help programs, failed to upgrade vocationally, refused to
18 work, failed to submit to a urinalysis test, failed a urinalysis test, possessed contraband,
19 attempted to escape, disrespected staff, and refused to obey orders on multiple occasions. Id.
20 Therefore, even if the Board did find that petitioner's parole plans were unrealistic, the Board
21 relied upon numerous other factors in denying petitioner parole. Therefore, the Board's decision
22 was based upon some evidence. Accordingly, the state court's decision was not contrary to, or an
23 unreasonable application of clearly established federal law, nor was it an unreasonable
24 determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

    3.    <u>Petitioner's Right to Due Process and Right to Equal Protection Were Not Violated by the Board's Denial of Parole</u>

27     Petitioner claims that if the Board has granted earlier parole release dates to other inmates
28 convicted of more serious offenses, then its refusal to grant him parole is a violation of his right

1  to due process and his right to equal protection. Petition at 11. Petitioner maintains that the
2  Board is required to conduct a comparative review of his offense to the offenses of other
3  prisoners who have been released on parole. <u>Id.</u> He asserts that there is "no equality of sentences
4  for similar crimes and the granting of a parole release date is an arbitrary process." <u>Id.</u> at 12.
5  Thus, petitioner maintains that the Board violated his right to due process and his right to equal
6  protection in denying him parole.

7       The equal protection clause mandates that people who are similarly situated must be
8  similarly treated. <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985). As
9  respondent notes, however, the Board need only provide an inmate with "'an opportunity to be
10 heard, and when parole is denied... inform the inmate in what respects he falls short of qualifying
11 for parole.'" Resp. Mem. at 6 (quoting <u>Greenholtz</u>, 442 U.S. at 16). Since the Board made an
12 individualized review of petitioner's case, petitioner's right to due process and his right to equal
13 protection were not violated.

14      This court concludes that petitioner's right to due process and equal protection were not
15 violated. The evidence set forth in the underlying record demonstrates that the Board's decision
16 was reliable. Petitioner was present at his parole hearing and represented by counsel.
17 Additionally, petitioner was afforded the opportunity to participate in the hearing and present
18 evidence favorable to his position. Because the Board found petitioner unsuitable for parole after
19 an individualized review, this court concludes that the proportionality analysis is inapplicable in
20 petitioner's case. The Board may lawfully deny petitioner parole without comparing his offense
21 to other inmates with the same offense "to [the Board's] base term matrices, or to the minimum
22 statutory prison term for that offense." <u>Dannenberg</u>, 34 Cal. 4th at 1098. Thus, the Board is not
23 required to conduct a comparative analysis until it determines suitability for release on parole.
24 Accordingly, the state court's decision was not contrary to, or an unreasonable application of
25 clearly established federal law, nor was it an unreasonable determination of the facts in light of
26 the evidence presented. 28 U.S.C. § 2254(d)(1), (2).
27 ///
28 ///

## CONCLUSION

This court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying Board of Prison Terms' parole hearing. Accordingly, the petition for the writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 4/21/08

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge